# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-2576

NAACP DELAWARE STATE CONFERENCE OF BRANCHES; LAMOTTE JOHNS; TRANECKA CHARLES; NICKEA ROWE; SEMAJ GWYN; NATASHA GREEN; ANTHONY GREEN,
Appellants

v.

CITY OF WILMINGTON; WILFREDO CAMPOS, in his capacity as Chief of Police, Wilmington Police Department; MICHAEL PURZYCKI, in his capacity as Mayor of the City of Wilmington

_____

On Appeal from the U.S. District Court, D. Del.
Judge Gregory B. Williams, No. 1:23-cv-01205

Before: BIBAS, CHUNG, and AMBRO, *Circuit Judges*
Argued: June 24, 2026; Filed: Aug. 10, 2026
_____

NONPRECEDENTIAL OPINION[*]

BIBAS, *Circuit Judge*. Police officers, and the cities they work for, can be held accountable for racial discrimination. But if the harm has not yet happened, plaintiffs must meet a high bar to enjoin it: They must show that the city has a policy or custom of such violations and that plaintiffs themselves face a real and immediate threat of harm. Because the plaintiffs here have not made either showing, we will AFFIRM the dismissal of their complaint.

The Delaware branch of the NAACP and six black residents of Wilmington filed suit against that city, its mayor, and its police chief. They allege that the police department has a pattern and practice of unconstitutional searches, seizures, pedestrian and car stops, and racially biased policing, in violation of Title VI, the Fourth Amendment, and the Fourteenth Amendment's Equal Protection Clause. Each individual plaintiff alleges that he or she was

[*]This is not an opinion of the full Court and, under 3d Cir. IOP 5.7, is not binding precedent.

illegally stopped, searched, or seized in 2022 or 2023; two allege that happened to them twice. And the NAACP says that because of that misconduct, it has spent and will keep spending its limited time and money to advocate for change and organize rallies, protests, education, and the like. Plaintiffs seek not damages, but forward-looking relief: a declaration that the police are violating the law and an injunction ordering them to stop. The District Court dismissed their lawsuit for lack of standing. We review de novo. *Schuchardt v. President*, 839 F.3d 336, 343–44 (3d Cir. 2016).

*No individual standing.* Federal courts may resolve only live "Cases" or "Controversies." U.S. Const. art. III, §2, cl. 1. Those exist only if a plaintiff has standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). For standing, a plaintiff must have suffered a concrete injury that is likely traceable to the defendants' conduct and likely redressable by a favorable ruling. *Id.* He must show standing for each claim he brings and each type of relief that he seeks. *Id.* at 431. For forward-looking relief, he must show that he faces "a real and immediate threat" of future injury. *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

*Lyons* is the controlling precedent for seeking to enjoin police practices. Lyons alleged that police had pulled him over for a traffic violation and then put him in a chokehold "without provocation." *Id.* at 97–98. In addition to damages, he also sought to enjoin officers from using chokeholds in the future. *Id.* at 98. To show standing for the injunction, he needed to allege not only that city policy let officers use chokeholds absent provocation, but also "credibly allege that he faced a realistic threat from the future application of the City's policy"—meaning "that he, himself, will not only again be stopped by the police but will be choked without any provocation or legal excuse." *Id.* at 106 n.7.

2

So too here: Plaintiffs must plausibly allege both that Wilmington police have a pattern of illegal stops, searches, or seizures and that they themselves face a real and immediate threat of such a violation. They have not.

To start, they fail to plausibly allege an unconstitutional pattern or practice that harmed them. Even though they allege that police officers lie in their warrant applications, they never claim that they were, or in the future might be, harmed by that alleged practice. And plaintiffs likewise do nothing to connect other alleged practices, like using unrecorded radio frequencies or turning off body cameras, to any of their alleged constitutional violations. Without more, these allegations do not support an inference of deliberate indifference to an unconstitutional practice. Plus, many of plaintiffs' alleged practices are committed by Operations Safe Streets officers. But they connect at most four alleged constitutional violations over three-and-a-half years to those officers. That is hardly a pattern and practice, let alone a Department-wide one attributable to city policy. *See id.* (noting that Lyons needed to show standing relevant to the scope of the injunction he sought). The same is true of the allegations that courts suppressed evidence from three criminal cases over the course of five-plus years, ending years before plaintiffs filed their amended complaint. Plaintiffs also cite raw statistical disparities in the percentages of arrestees who are black. But they offer no context to support an inference that the arrests were made because of race, like the racial makeup of all people stopped or the circumstances in which police arrest those whom they have stopped.

Nor have plaintiffs shown that they are likely to be subject to such violations again in the immediate future. They would have to show both that they are likely to encounter police

3

and that the police will repeat the alleged illegal conduct then. *Id.* at 106 & n.7. True, two of them have alleged being pulled over twice. But one of those plaintiff's stops were separated by two or maybe three years—too remote to show an imminent threat. And though the other one was stopped twice in eight days, both stops were conducted by the same four officers from Operation Safe Streets. That allegation hardly shows a Department-wide policy or imminent threat. On the contrary, as the District Court stressed, "the City's written policies expressly disavow the alleged unconstitutional conduct." App. 13.

Resisting this conclusion, plaintiffs try to distinguish *Lyons*. Unlike Lyons, who was breaking a traffic law, they are law-abiding. Yet Lyons's harm seems as hard to avoid: He was pulled over for a burnt-out taillight (which drivers are often ignorant of), while his harm was not the stop but the allegedly unprovoked chokehold. *Lyons*, 461 U.S. at 114 (Marshall, J., dissenting); *id.* at 97 (majority). So plaintiffs' situation is more like Lyons's than they think. In any event, inability to avoid a harm is not enough to make it likely or imminent.

Lastly, plaintiffs cite our decision in *Hassan*, but it does not help. *Hassan v. City of N.Y.*, 804 F.3d 277 (3d Cir. 2015). The *Hassan* plaintiffs alleged an ongoing, comprehensive, continual program of surveillance of Muslims, one that authorities acknowledged and implied would continue. *Id.* at 285–87. Though our opinion did not address the likelihood of recurrence, given the program's pervasiveness, it was likely that any given class member would experience the complained-of harm again. But here, as in *Lyons*, the harm depends on a series of independent events, each of which requires individual officers to choose to

4

break the law. *See Lyons*, 461 U.S. at 103–04. We cannot infer that these events are likely to recur.

Plaintiffs have not alleged specific facts that make their pattern-or-practice allegations plausible, or facts showing a real and immediate threat of future harm. And because the named plaintiffs individually lack standing to seek an injunction, they cannot bring their claims on behalf of a class. *McNair v. Synapse Grp.*, 672 F.3d 213, 223 (3d Cir. 2012).

*No associational standing*. An association can sue on its members' behalf when those members would themselves have standing, "the interests at stake are germane to the organization's purpose," and neither the claim nor the relief requires individual members to participate. *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 269 (2015) (internal quotation marks omitted). But here, the NAACP lacks standing for the same reason that the individual plaintiffs do: It does not plausibly allege a pattern or practice or that any particular member is threatened by an imminent injury.

*No organizational standing*. Finally, the NAACP claims organizational standing. An organization has standing to sue in its own right (not on its members' behalf) if it satisfies the same standing requirements that apply to individuals. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393–94 (2024). But it does not have standing just because it spends money to oppose someone's conduct. *Id.* at 394. And as counsel conceded at argument, an organization does not have standing just because it disagrees with a government policy, wants to spend money to further its ideological mission, diverts money from one mission to another, or has trouble accomplishing its mission.

That concession is the ballgame. The NAACP's mission is to ensure equal rights and eliminate race discrimination. So, it alleges, it has responded to the police misconduct by organizing rallies, protests, and educational events that use up time and money that it would otherwise have spent on other issues, impeding its mission. It also tries to relabel these harms as interfering in its "core business activities." Appellants' Br. 4, 15–16. But these allegations just repackage the ideological, spending, and resource-diversion "harms" that it concedes cannot support standing. Relabeling an insufficient harm does not make it suffice.

Because the District Court properly held that none of the plaintiffs has plausibly alleged facts sufficient for standing, we will AFFIRM its dismissal.

*Counsel for Appellants*

David Rudovsky                [Argued]
KAIRYS, RUDOVSKY, MESSING, FEINBERG & LIN

Jared Silberglied
Jason H. Beehler
AMERICAN CIVIL LIBERTIES UNION

*Counsel for Appellees*

Christine D. Haynes
Kelly E. Farnan                [Argued]
Sara M. Metzler
RICHARDS, LAYTON & FINGER